UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

DARCY A. HAGER, fka DARCY FRANTZ-HAGER,

Case No. DK 17-01593
Hon. Scott W. Dales
Chapter 13

        Debtor.

_____/

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                  Chief United States Bankruptcy Judge

I. INTRODUCTION

The law firm of Chase Bylenga Hulst, PLLC (the "Firm") filed its Application for Additional Attorney Fees and/or Recovery of Costs Advanced (the "Fee Application," ECF No. 72), which it later corrected (ECF No. 83) to reflect a prepetition payment from the Firm's former client, chapter 13 debtor Darcy A. Hager (the "Debtor"). The Firm seeks an order approving as a cost of administration its fees and expenses in the amount of $10,438.85 incurred in connection with the Debtor's case. Much of the proposed award relates to the Debtor's initially unsuccessful effort to confirm a plan the court regarded, after an evidentiary hearing, as not confirmable.

The Debtor's most active creditor, Lawrence W. Newmeyer, objected to the Fee Application, and the court held a hearing in Kalamazoo, Michigan, on December 19, 2017. The Debtor and chapter 13 trustee Barbara P. Foley (the "Trustee") supported the Fee Application, as corrected. After listening to oral arguments, and permitting Mr. Newmeyer to file a supplement to his original objection,[1] the court took the matter under advisement. For the following reasons the court will approve the Fee Application over objection.

---

[1] *See* Creditor Lawrence W. Newmeyer's Response to Chase Bylenga Hulst's Itemization of Fees (the "Post-Hearing Response," ECF No. 84). Mr. Newmeyer's original objection to the Fee Application is filed at ECF No. 74.

## II. JURISDICTION

Pursuant to 28 U.S.C. § 1334(a), the United States District Court has jurisdiction over the Debtor's case, which has been referred to the United States Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and LCivR 83.2(a) (W.D. Mich.).  The Fee Application includes claims against the bankruptcy estate, and therefore falls well within the Bankruptcy Court's authority to "hear and determine" the outcome of this dispute by entering a final order.  *See* 28 U.S.C. § 157(b)(2)(B).

Indeed, the Sixth Circuit and the United States Supreme Court have acknowledged that the authority of a Bankruptcy Court is at its height when the court considers matters affecting the allowance or disallowance of claims.  *See generally Stern v. Marshall*, 131 S.Ct. 2594, 2601 (2011); *Onkyo Europe Electronics GMBH v. Global Technovations Inc. (In re Global Technovations Inc.)*, 694 F.3d 705 (6th Cir. 2012).  The present matter involves no request to "augment the estate" but instead involves dividing the property already included within it pursuant to statute.  The court has ample authority to resolve the dispute.

## III. ANALYSIS

The court's task is governed largely by § 330(a)(4) and the lodestar analysis, tempered by common sense and experience.  *See* 11 U.S.C. § 330(a)(4); *In re Boddy*, 950 F.2d 334, 337 (6th Cir. 1991); *In re Ulrich*, 517 B.R. 77 (Bankr. E.D. Mich. 2014).  The statute permits the court to consider numerous factors including, but not limited to, the following:

(A)  the time spent on such services;

(B)  the rates charged for such services;

(C)   whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)   whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)   with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)   whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).   The Sixth Circuit's *Boddy* decision elaborates on the statutory text, directing the court to consider the following:

(i) the time and labor required; (ii) the novelty and difficulty of the question; (iii) the skill required to perform the legal service properly; (iv) the preclusion of other employment by the attorney due to acceptance of the case; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) the time limitations imposed by the client or the circumstance; (viii) the amount of money involved and the results obtained; (ix) the experience, reputation, and ability of the attorney; (x) the lack of desirability of the case; (xi) the length and nature of the professional relationship with the client; and (xii) fee awards in similar cases.

*Boddy*, 950 F.2d at 338.   For its part, this court has offered its own guidance in the Memorandum Regarding Allowance of Compensation and Reimbursement of Expenses for Court-Appointed Professionals, as amended effective October 1, 2013, (the "Fee Memorandum"), which, like the decision in *Boddy*, includes consideration of the "results attained."   Fee Memorandum at ¶ 19 (Exhibit 5 to Local Bankruptcy Rules).

First, as Mr. Newmeyer agreed during the hearing, he is not challenging the Firm's hourly rates, nor for that matter has he offered any specific challenge to the Firm's modest expenses.   And, as the court observed based on its review of the itemization included with the Fee Application, the

Firm appropriately staffed this matter, assigning paralegal work to paraprofessionals with a lower hourly rate ($125.00 per hour), and leaving *bona fide* legal work to counsel, who charged $220.00 – the hourly rate the court typically approves in consumer matters for experienced bankruptcy counsel who regularly attend continuing legal education programs. *See* Fee Memorandum at ¶ 16. The Firm's attorneys fall into this category.

Second, in considering the reasonableness of the time the Firm expended in connection with the case, the court attributes the relatively high fee to the fact that, in response to Mr. Newmeyer's objection to the Debtor's first plan, the court held an evidentiary hearing over several hours which required many more hours in preparation. The Debtor and the Firm agreed to an hourly, not contingent, fee, and the hours added up as the parties approached and participated in the contested confirmation hearing.

After carefully reviewing the itemization of time, the court concludes that the time spent was reasonable. As for the rate, conducting an evidentiary hearing requires considerable experience and skill which Debtor's counsel displayed throughout the proceeding, although the court ultimately ruled against her client. The hours spent in preparation and trial, as well as the entries related to more basic legal services in connection with the case, took the Firm's resources away from other clients. And, most of the other *Boddy* factors point in favor of approving the fees.[2] Moreover, the court finds that the Firm's work in filing the case and preparing the original plan promised to benefit the Debtor as well as creditors (at least as compared to the alternative of liquidation under chapter 7). Indeed, the court eventually confirmed the Debtor's plan, though

---

[2] From the testimony during the evidentiary hearing and the court's experience in the Debtor's chapter 7 case, it appears that the Debtor, an experienced paralegal, is also a difficult client. The court notes that, between the Debtor's chapter 7 and chapter 13 cases, she has employed three attorneys, and that Mr. Newmeyer, himself, is her former counsel. Among the *Boddy* factors the Sixth Circuit lists "the lack of desirability of the case." *Boddy*, 950 F.2d at 338. Even difficult clients, with undesirable cases, deserve competent representation.

substantially revised, based on the original plan and the evidence adduced at the contested confirmation hearing.  *See* Confirmation Order (ECF No. 69) at p. 3 (referring "to facts the court has already considered in the context of the prior evidentiary hearing"); Order Denying Reconsideration Motion (ECF No. 81) at p. 2 (same).

The court notes, as Mr. Newmeyer did during the hearing, that the Firm's efforts were initially unsuccessful to some extent, at least from her client's point of view:  the court declined to confirm the original plan.  Therefore, the "results obtained" factor from *Boddy* points against approval.  Nevertheless, the Bankruptcy Code discourages "Monday morning quarterbacking" by expressly directing the court to consider not only the results obtained, but also "whether the services were necessary to the administration of, or beneficial *at the time at which the service was rendered* toward the completion of, a case under this title . . ."  11 U.S.C. § 330(a)(3)(C).  Here, although the court did not share the Firm's positive view of the original plan, the chapter 13 trustee did, and in fact she and her counsel recommended confirmation before and during the evidentiary hearing.  At the time counsel rendered services, they certainly seemed necessary and beneficial.

Mr. Newmeyer expresses his frustration at having to subordinate his prepetition claim for attorney fees to the Firm's post-petition administrative claim for attorney fees, especially because he prevailed over the Firm at trial regarding the original plan.  He summarizes his objection in his post-hearing filing:

> The proposition that creditors, through reduction of the premium, should have to pay the fees of Debtor's attorney when the court rejects Debtor's proposed plan places creditors in a no-win situation: accept a grossly insufficient plan, so that the creditors lose money, because even if the creditors successfully oppose such a plan, the creditors will lose money by being required to pay Debtor's attorney.

*See* Post-Hearing Response at p. 2.  In effect, he complains that the Bankruptcy Code includes a perverse fee shifting provision in § 330(a)(4), at least where the attorneys who authored the plan

were in the best position to know that it was doomed from the start, as a matter of feasibility and bad faith. *Id.* at pp. 2-3. His pique is understandable.

But, equally understandable (and dispositive) is the choice that Congress made in § 330(a)(4) to encourage competent counsel to represent debtors in chapter 13, knowing full-well that many, if not most, cases do not succeed. *Harris v. Viegelahn*, 135 S. Ct. 1829, 1835 (2015) (observing that Congress recognized the propensity of chapter 13 cases to fail, with only one in three ending in discharge). Congress clearly intended to shift fees, even in unsuccessful chapter 13 cases. Otherwise, it would have included in § 330(a) some provision to this effect. Of course, it is not clear whether the Debtor's case will be among the ill-fated many or the favored few but, regardless, Mr. Newmeyer's quarrel is with Congress, not the court.

## IV. CONCLUSION AND ORDER

The Firm did not take the Debtor's case on a contingency fee basis, and spent many hours working for the Debtor towards confirmation of a plan that she and her Trustee regarded as confirmable. The fact that Mr. Newmeyer and the court did not agree with the assessment does not disqualify the Firm from recovering payment as an expense of administration if, as the court finds, the Firm can satisfy the lodestar analysis and other factors identified in this opinion. The court recognizes that under § 330(a)(2), it may award fees in an amount less than requested, but on this record it will approve the Fee Application as filed.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Fee Application (ECF Nos. 72 & 83) is APPROVED and the Firm shall have an administrative priority claim in the amount of $10,438.85 payable as provided in the confirmed plan.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Lawrence W. Newmeyer, Esq., Kerry D. Hettinger, Esq., Kurt Steinke, Esq., Ms. Darcy A. Hager, the United States Trustee, and all entities included on the most recent creditor matrix.

[END OF ORDER]

**IT IS SO ORDERED.**

**Dated December 29, 2017**



Scott W. Dales
United States Bankruptcy Judge